**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

**JOSE DIAZ,**

    **Petitioner,**

    **v.**                                                                   **Case No. 14-CV-251**

**MICHAEL BAENEN, Warden,
Green Bay Correctional Institution,**

    **Respondent.**

**DECISION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS AND DISMISSING CASE**

Jose Diaz ("Diaz"), a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Diaz was convicted of one count of attempted first-degree intentional homicide while using a dangerous weapon and one count of first-degree reckless injury while using a dangerous weapon. (Am. Habeas Petition at 2, Docket # 6.) Diaz was sentenced to twenty-five years of initial confinement, followed by ten years of extended supervision. (Judgment of Conviction, Answer, Ex. A at 1, Docket # 11-1.) Diaz alleges that his due process rights were violated when the trial court admitted irrelevant and unduly prejudicial testimony. (Docket # 6 at 6.)

The parties have briefed the petition for a writ of habeas corpus and the petition is ready for disposition. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

A Milwaukee County jury found Diaz guilty of one count of attempted first-degree intentional homicide while using a dangerous weapon and one count of first-degree reckless injury

while using a dangerous weapon. (Docket # 11-1.) The convictions stem from allegations that Diaz attacked his mother-in-law in her garage and another woman who came to her aid. (*State v. Diaz*, 2011AP2547 (Wis. Ct. App. Oct. 30, 2012), Answer, Ex. B at 2, Docket # 11-2.) The relevant facts are taken from the decision of the Wisconsin Court of Appeals.

Diaz lived in the lower unit of a duplex with his wife, their child, and his mother-in-law, Doris Szelagowski ("Szelagowski"). (*Id.*) Szelagowski owned the duplex and rented the upper unit to two tenants. (*Id.*) Szelagowski also owned other rental properties and held life insurance, for which Diaz's wife was the primary beneficiary. (*Id.*) Szelagowski testified that her daughter and Diaz would use her credit card from time to time and on April 20, 2010, Szelagowski discovered that her credit card had been maxed out. (*Id.* at 2-3.) Szelagowski blamed Diaz for the charges. (*Id.* at 3.) Szelagowski called her daughter's cell phone and left a message telling her that she and Diaz had to move out. (*Id.*) Diaz had his wife's cell phone at the time the message was left. (*Id.*)

After leaving work at 8:30 p.m. that night, Szelagowski pulled her car into the garage near the duplex, which was usually kept locked. (*Id.*) Szelagowski remembered walking into the garage, but later awoke in the hospital. (*Id.*)

The second victim, Cynthia Matzinger ("Matzinger") testified that she was a tenant in the upper unit of Szelagowski's duplex. (*Id.*) On the night of the attack, she was walking home and heard Szelagowski screaming as she neared the garage. (*Id.*) Matzinger testified that she rushed toward the garage, opened the side door, and was immediately struck on the head. (*Id.*) She did not see who struck her. (*Id.*) Matzinger was struck several more times and pushed to the ground. (*Id.*) Matzinger's roommate, Emma Rodomski ("Rodomski") heard her screaming and came outside. (*Id.*)

Rodomski testified that she was working on her computer when she heard a wailing sound. (*Id.*) She went downstairs to investigate and found Matzinger bleeding from the head and Szelagowski lying with blood all around her. (*Id.*) Rodomski remembered seeing Diaz in the backyard when she returned from getting towels for Matzinger and Szelagowski. (*Id.*) Diaz was carrying his infant daughter. (*Id.*)

A neighbor testified that on the night of the attacks, he was in front of his house and saw someone dressed in white clothing running down the street. (*Id.* at 4.) This person was carrying a bundle of something and the neighbor heard a plastic lid being dropped from the dumpster at the business around the corner. (*Id.*) A search of the dumpster revealed a bag containing dark-colored clothing and shoes. (*Id.*) A forensic scientist with the crime laboratory testified that the blood on the clothing and shoes matched Szelagowski's DNA profile. (*Id.*)

Kory Tetley ("Tetley"), a friend of Diaz's wife, testified that on the night of the attacks, she saw Diaz dressed in a white shirt, white basketball pants, and white socks. (*Id.*) Diaz took Tetley with him to pick up his wife to go see Szelagowski in the hospital. (*Id.*) On the way to get Diaz's wife, Diaz stopped at a custard shop. (*Id.*) When asked by Tetley why they were stopping, Diaz told her that he had to throw something out. (*Id.*) Diaz grabbed something out of the trunk and threw it into the dumpster. (*Id.*) Tetley testified that Diaz told her he was throwing out cocaine. (*Id.*) Police later searched the custard shop's dumpster but did not find anything incriminating. (*Id.* at 5.)

Diaz's wife testified that she and Diaz had used her mother's credit card without permission at times. (*Id.*) This angered Szelagowski, who had threatened to kick them out of her house in the past. (*Id.*) Diaz's wife testified that the clothing and shoes found in the dumpster belonged to Diaz. (*Id.*)

Prior to trial, Diaz moved to preclude Tetley from testifying that he stopped at the custard shop to remove a large amount of cocaine from the trunk of his vehicle and to throw it into a dumpster. (*Id.* at 6.) Diaz argued that Tetley's testimony was irrelevant given that no incriminating evidence was ever located. (*Id.*) Diaz further argued that he was not charged with any drug-related activity and that drugs were not relevant to the case. (*Id.*) As such, Diaz argued that Tetley's testimony implying that he was a cocaine dealer was unduly prejudicial. (*Id.*) The State argued that its theory was that Diaz had gotten rid of some type of weapon—not cocaine—when he stopped at the custard shop. (*Id.*) The State argued that the testimony was not unduly prejudicial because an officer would testify that the dumpster was searched and no cocaine was found. (*Id.*) The trial court agreed and found that Tetley's testimony was admissible to show evidence of guilt. (*Id.*)

On direct appeal, Diaz raised a single issue. He argued that the trial court erred in admitting Tetley's testimony. (*Id.* at 5.) The Wisconsin Court of Appeals upheld the trial court's admission of Tetley's testimony, finding that the trial court gave valid reasons for admitting the testimony and in doing so, did not erroneously exercise its discretion. (*Id.* at 7.) The Wisconsin Supreme Court denied Diaz's petition for review (Answer, Ex. C, Docket # 11-3.) Diaz filed the instant petition for a writ of habeas corpus on March 7, 2014 (Docket # 1) and filed an amended petition on April 7, 2014 (Docket # 6).

## STANDARD OF REVIEW

Diaz's petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 100 Stat. 1214, which provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This provision entitles federal courts acting within their jurisdiction to interpret the law independently, but requires them to refrain from "fine tuning" state court interpretations. *Lindh v. Murphy*, 96 F.3d 856, 870-77 (7th Cir. 1996), *rev'd on other grounds*, 521 U.S. 320 (1997). "Thus, although this court reviews the state court's legal conclusions and mixed questions of law and fact de novo, that review is 'tempered by AEDPA's deferential constraints.'" *Hereford v. McCaughtry*, 101 F. Supp. 2d 742, 746 (E.D. Wis. 2000) (quoting *Sanchez v. Gilmore*, 189 F.3d 619, 623 (7th Cir. 1999)).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 120 S.Ct. 1495, 1519 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court

'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 120 S.Ct. at 1523).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748-49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained that:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565-66 (7th Cir. 2000) (quoting *Williams*, 120 S.Ct. at 1522), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Diaz challenges his custody on one ground. He argues that the state trial court's ruling admitting testimony "of a witness who drove with [Diaz] to the hospital following the attack" violated Diaz's right to due process. (Docket # 6 at 6.) Specifically, the witness, Tetley, testified that on the way to the hospital, Diaz stopped at a custard shop. When asked by Tetley why they were stopping, Diaz told her that he was throwing out cocaine. This testimony, Diaz argues, was unduly prejudicial. In opposing Diaz's petition, the respondent argues that Diaz procedurally defaulted his due process claim because he did not fairly present the claim to the state courts. (Resp. Br. at 4, Docket # 14.) The respondent further argues that even assuming the merits of Diaz's due process

claim can be reached, Diaz has not met his burden of proving that his custody is in violation of the United States Constitution. (*Id.* at 7.)

A federal court may not entertain a petition from a prisoner being held in state custody unless the petitioner has exhausted his available state remedies prior to seeking federal habeas relief. *See* 28 U.S.C. § 2254(b); *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008). "This so-called exhaustion-of-state-remedies doctrine serves the interests of federal-state comity by giving states the first opportunity to address and correct alleged violations of a petitioner's federal rights." *Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007). Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus is the duty to fairly present his federal claims to the state courts. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004).

For a constitutional claim to be fairly presented to a state court, both the operative facts and the controlling legal principles must be submitted to that court. *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992). Whether a petitioner has done so depends on several factors, including: (1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004) (internal quotation and citation omitted).

Diaz acknowledges that the Wisconsin Court of Appeals "did not specifically address the due process analysis"; however, he argues that "the argument was one of fundamental fairness, which is always a due process argument." (Petitioner's Br. at 14, Docket # 2.) Considering the factors

articulated in *Sweeney*, Diaz did not fairly present his due process claim before the state courts. Diaz, who was represented by counsel before the Wisconsin Court of Appeals, did not rely on federal cases that engage in a constitutional analysis. Rather, in his brief before the Wisconsin Court of Appeals, Diaz argued that the trial court erred in admitting Tetley's testimony because the evidence was not relevant pursuant to Wis. Stat. § 904.01. (Answer, Ex. D at 12-14, Docket # 11-4.) Diaz further argued that the court erroneously found that the danger of unfair prejudice was outweighed by the relevance, in contradiction of Wis. Stat. § 904.03. (*Id.* at 14-15.)

Diaz did not rely on state cases which apply a constitutional analysis to similar facts. In arguing unfair prejudice, Diaz cited *State v. DeSantis*, 155 Wis. 2d 774, 791-92, 456 N.W.2d 600 (1990) for the proposition that evidence is "unfairly prejudicial if it threatens the fundamental goals of accuracy and fairness by misleading the jury or influencing the jury to decide the case on an unfair basis." (Docket # 11-4 at 15.) The Wisconsin Supreme Court in *DeSantis* did address constitutional issues, however, the issues before that court were whether the circuit court abused its discretion and violated the defendant's constitutional rights to confront witnesses and to present a defense when it precluded testimony the defendant proffered concerning the complainant's prior untruthful allegations. *DeSantis*, 155 Wis. 2d at 777, 456 N.W.2d at 602. Although the defendant in *DeSantis* also raised a due process argument, it was in regards to an argument about the introduction of expert testimony on the behavior of sexual assault victims. *Id.* at 794-95, 456 N.W.2d at 609.

Nor did Diaz frame his claim in terms so particular as to call to mind a specific constitutional right. Diaz did not frame his issue before the Wisconsin Court of Appeals as one for denial of his right to due process by denying him a fundamentally fair trial. Rather, Diaz framed this issue as one

of the trial court erroneously exercising its discretion in admitting the evidence, in violation of Wisconsin law.

Finally, although Diaz arguably alleges a pattern of facts that is within the mainstream of constitutional litigation, it is not until his petition before this Court that he frames the issue as one of a violation of due process. Thus, considering the *Sweeney* factors, Diaz did not fairly present his due process argument to the Wisconsin courts and thus has procedurally defaulted the claim. *Braunreiter v. Krenke*, 125 F. Supp. 2d 1121, 1127 (E.D. Wis. 2000) ("[A] federal habeas petitioner may procedurally default her federal law claim if she does not first fairly present the substance of the federal claim to the state courts.").

A procedural default will bar federal habeas relief unless the petitioner can demonstrate both cause for and prejudice stemming from that default or he can establish that the denial of relief will result in a miscarriage of justice. *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Cause to overcome a procedural default requires a showing "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must present evidence that the errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004) (quoting *United States v. Frady*, 456 U.S. 152 (1982) (emphasis omitted). The fundamental miscarriage of justice exception requires a showing that "a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (citation omitted). Diaz does not attempt to establish that

he meets either of the exceptions to the procedural default bar. Thus, Diaz is not entitled to habeas relief on his due process claim.

Even assuming Diaz had fairly presented his due process claim before the Wisconsin courts, state court evidentiary rulings only implicate the Due Process Clause when "evidence is so extremely unfair that its admission violates fundamental conceptions of justice." *Richardson v. Lemke*, 745 F.3d 258, 275 (7th Cir. 2014). However, claims "based on the 'catch-all sense of due process' almost always fail." *Id.* (internal citation omitted); *see also Brown v. Watters*, 599 F.3d 602, 616 (7th Cir. 2010) ("Absent a showing that the admission of the evidence violated a specific constitutional guarantee, a federal court can issue a writ of habeas corpus on the basis of a state court evidentiary ruling only when that ruling violated the defendant's right to due process by denying him a fundamentally fair trial. The standard, then, is . . . whether the probative value of the state's evidence was so greatly outweighed by its prejudice to [the defendant] that its admission denied him a fundamentally fair trial.") (citation omitted).

Consideration of the Wisconsin Court of Appeals' decision is deferential, and relief will only be granted if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United State Supreme Court or was based on an unreasonable determination of the facts in light of the evidence presented. *Richardson*, 745 F.3d. at 276. In this case, it is difficult to apply AEDPA's deferential standard because the Wisconsin Court of Appeals' decision was based entirely on state rules of evidence. However, "a state court decision that does not cite federal precedent is still consistent with federal law so long as neither the reasoning nor the result of the state court decision contradicts the Supreme Court's decisions." *Id.*

The Wisconsin Court of Appeals did not contradict any principles articulated by the Supreme Court. "When engaging in an evidentiary due process analysis, we often simplify the inquiry by asking whether the probative value of the evidence is greatly outweighed by the prejudice to the accused." *Id*. This is precisely the analysis undertaken by both the Milwaukee County Circuit Court (Transcript of Jury Trial, Docket # 11-4 at 29) and the Wisconsin Court of Appeals (Docket # 11-2 at 5-6). I agree with the court of appeals' finding that Tetley's testimony that Diaz threw something away in the dumpster at the custard shop was admissible to show evidence of consciousness of guilt. *See State v. Bettinger*, 100 Wis. 2d 691, 698, 303 N.W.2d 585, 589 (1981) ("It is generally acknowledged that evidence of criminal acts of an accused which are intended to obstruct justice or avoid punishment are admissible to prove a consciousness of guilt of the principal criminal charge."). There was testimony that after the attacks, clothes with the victim's blood on them were found in a nearby dumpster. The weapon, however, was not found. The State argued to the trial court that it was a "reasonable inference that what happened here was that the defendant was actually getting rid of some other incriminating piece of evidence." (Docket # 11-4 at 27.)

I further agree with the court of appeals' finding that the prejudice to Diaz was limited. The State did not argue that Diaz threw away cocaine. Rather, the State introduced testimony that the dumpster was searched and no cocaine was found. (Docket # 11-4 at 28.) The State was building a theory that Diaz threw away the weapon used in the attacks, not cocaine. (*Id.* at 27.) Further, the circuit court stated that it was willing to consider a limiting instruction to the jury that Diaz was not involved with drugs (*id.* at 29), but Diaz never requested one (Docket # 11-2 at 6). Thus, Tetley's testimony was not so extremely unfair that its admission violated fundamental conceptions of justice. *See Richardson*, 745 F.3d at 275. As such, Diaz's due process claim fails.

**CERTIFICATE OF APPEALABILITY**

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

When issues are resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Each showing is a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.* at 485.

In this case, reasonable jurists would not find the decision to deny the petition as to Diaz's due process claims on the ground of procedural default debatable. Diaz acknowledges that the Wisconsin Court of Appeals did not "specifically" address his due process claim. The court of appeals did not address it because Diaz did not raise it. Even considering the due process claim on the merits, reasonable jurists could not debate that Diaz fails to raise a cognizable due process claim.

For these reasons, I will deny Diaz a certificate of appealability. Diaz retains the right to seek a certificate of appealability from the Court of Appeals pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 6) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that a certificate of appealability shall not issue.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 23rd day of December, 2014.

                                                          BY THE COURT

                                                          *s/Nancy Joseph*
                                                          NANCY JOSEPH
                                                          United States Magistrate Judge